IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ARTHUR O. ARMSTRONG,            )
                                )
         Plaintiff,             )
                                )
     v.                         )     1:23CV378
                                )
NORTH CAROLINA, et al.,         )
                                )
         Defendants.            )
```

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

On May 8, 2023, Plaintiff commenced this action by filing a Complaint (Docket Entry 1) and, the next day, he paid the filing fee (see Docket Entry dated May 9, 2023). The Complaint "prays for judgment in the sum of $35,000,000.00 under 42 U.S.C.[ §] 1983" (Docket Entry 1 at 2), against North Carolina, the City of Durham, and the latter's "Chief of Police" (id. at 1), for an incident on "January 12, 2000" (id.), "when [D]efendant stopped, detained and harassed [Plaintiff]," then "[m]ade an entry, without a warrant on personal premise of [Plaintiff], searched and seized his property and invaded his privacy" (id.), and finally "ma[de ] speeding violation-failed to appear false reports . . . amounting [to] official discrimination . . . [and] deprive[d Plaintiff] of liberty and property without due process . . . [by] depriv[ing him] of his driver's license[, all] in violation of the Fourth and Fourteenth Amendments" (id. (emphasis omitted)).

Because of Plaintiff's history of "predatory litigation in the face of sanctions," Armstrong v. Koury Corp., 16 F. Supp. 2d 616,

618 (M.D.N.C. 1998), aff'd, No. 98-2360, 168 F.3d 481 (table), 1999 WL 11298 (4th Cir. Jan. 13, 1999) (unpublished), the Court (per the late United States District Judge William L. Osteen, Sr.) previously "enjoin[ed] Plaintiff . . . from filing any new action or proceeding in any federal court, without first obtaining leave of that court," id. at 622. Undeterred, Plaintiff immediately resumed his campaign of vexatious litigation. See Armstrong v. Koury Corp., No. 1:97CV1028, Minute Entry (M.D.N.C. Sept. 3, 1999) (memorializing oral denial of permission to file new complaint); see also, e.g., Armstrong v. Durham Police Dep't, No. 1:00MC123, Docket Entry 2 (M.D.N.C. Feb. 2, 2001) (slip op.) (denying leave to file action). The Court (per Judge Osteen, Sr.) later modified the injunction (A) to "relieve[ Plaintiff] from his duty to procure court approval before instituting future litigation," Armstrong v. Koury Corp., No. 1:97CV1028, Docket Entry 48 at 2 (M.D.N.C. Feb. 6, 2001) (slip op.), and (B) to substitute this procedure:

> [For a]ny litigation [Plaintiff] desires to institute in this [C]ourt, he shall present the pleadings to the clerk and pay to the clerk the required filing fee for instituting new litigation. Upon filing of new proceedings accompanied by the filing fee, [Plaintiff] shall not serve summonses or copies of the complaint upon [any defendant] unless and until the [C]ourt enters an order authorizing [Plaintiff] to proceed. The [C]ourt will issue the order to proceed only if it determines that the litigation is not repetitious and not frivolous. The [C]ourt may, on its own initiative, dismiss non-meritorious claims.

Id.

After a multi-year hiatus in activity in this Court, Plaintiff once more set about making frivolous filings here (and continued that course of conduct intermittently for eight years). See, e.g., Armstrong v. Doe, No. 1:00MC50, Docket Entry 71 (M.D.N.C. May 7, 2015) (slip op.) (denying motions as frivolous); Armstrong v. City of Greensboro, No. 1:01CV827, 2007 WL 3046185 (M.D.N.C. Oct. 16, 2007) (unpublished) (dismissing action as repetitive and patently deficient). Another pause then ensued, until this year, when Plaintiff filed a complaint against North Carolina and two Greensboro police officers for an amorphous conspiracy linked to Plaintiff's arrest for driving while impaired on March 16, 1999. See Compl., Armstrong v. North Carolina, No. 1:23CV297, Docket Entry 1 (M.D.N.C. Apr. 7, 2023). The undersigned Magistrate Judge recommended that action's "dismiss[al] as an attempt to relitigate matters which have been previously dismissed," Armstrong v. North Carolina, No. 1:23CV297, 2023 WL 4138722, at *3 (M.D.N.C. Apr. 21, 2023) (unpublished), recommendation adopted, 2023 WL 4133937 (M.D.N.C. June 22, 2023) (unpublished) (Osteen, Jr., J.), and independently "insufficient to state a cause of action," id.

"Plaintiff did not object to th[at r]ecommendation." Armstrong, 2023 WL 4133937, at *1, but instead filed more than a dozen motions, all but one of which the Court (per Judge Osteen, Jr.) ordered "stricken because they [we]re procedurally improper and otherwise defective," id., and the last of which (seeking leave

3

to file another complaint) the Court "denied due to [the motion's] conclusory nature and . . . for the same basic reasons noted in the [r]ecommendation," id. That order also adopted the recommendation of dismissal, see id., and included this warning: "Plaintiff is hereby cautioned against making similar improper filings in any other cases. Failure to heed this warning shall result in the imposition of monetary and non-monetary sanctions." Id.

Between entry of the foregoing recommendation and order, Plaintiff commenced the instant action (see Docket Entry 1), as well as two others, see Compl., Armstrong v. North Carolina, No. 1:23CV364, Docket Entry 1 (M.D.N.C. May 1, 2023); Compl., Armstrong v. North Carolina, No. 1:23CV380, Docket Entry 1 (M.D.N.C. May 8, 2023).[1] "[Via Text] Recommendation, the [undersigned] Magistrate Judge recommend[ed] that [the action filed on May 1, 2023] be dismissed." Armstrong v. North Carolina, No. 1:23CV364, Docket Entry 59 at 1 (M.D.N.C. July 19, 2023) (slip op.) (Osteen, Jr., J.). "Following entry of th[at] Text Recommendation, Plaintiff filed a plethora of motions for summary judgment, a motion to amend the complaint, and a motion for leave to file a complaint." Id. (internal citations omitted). "Plaintiff also filed a petition in opposition to the [Text] Recommendation, which th[e C]ourt construe[d] as an objection to the [Text] Recommendation and a

---

1 Plaintiff has not paid the filing fee in the last of those three cases and the undersigned Magistrate Judge will address that issue by separate order in that case.

4

motion requesting leave to amend." Id. (internal citation omitted). The Court (per Judge Osteen, Jr.) (A) adopted the recommendation of dismissal, see id. at 2, "f[ound] the [amendment-related] motions should be denied due to their conclusory nature and because they [we]re otherwise defective for the same basic reasons stated in [Armstrong, 2023 WL 4138722]," Armstrong, No. 1:23CV364, Docket Entry 59 at 2, and (B) ordered "Plaintiff's other motions . . . stricken because they [we]re procedurally improper," id. Once again, that order "cautioned [Plaintiff] against making similar improper filings in any other cases," id., and emphasized that "[f]ailure to heed th[at] warning may result in the imposition of monetary and non-monetary sanctions," id.

Meanwhile, in this case, Plaintiff filed 49 Motions for Summary Judgment on May 16, 2023 (see Docket Entries 2 - 50), 175 Motions for Summary Judgment on May 23, 2023 (see Docket Entries 51 - 225), four Motions for Summary Judgment on May 31, 2023 (see Docket Entries 227 - 230), and 56 Motions for Summary Judgment on June 12, 2023 (see Docket Entries 231 - 286). Based solely on their sheer volume, those filings constitute an abuse of this Court's limited resources; moreover, even a cursory review confirms the frivolous character of those filings, as they do not actually seek summary judgment in this case, but instead attempt to assert separate claims in separate complaints against separate defendants for separate incidents spanning three-plus decades without payment

5

of separate filing fees (see, e.g., Docket Entry 2 at 1 (purporting to seek summary judgment for incident "[o]n July 23, 2012"); Docket Entry 2-1 at 1-3 (Complaint against North Carolina and Thomas E. Asbell II for incident "[o]n July 23, 2012" concerning "probation violation false reports" and "det[ention of] Plaintiff [for] 35 days in prison" (emphasis omitted)); Docket Entry 20 at 1 (purporting to seek summary judgment for incident "on October 3, 1996"); Docket Entry 20-1 at 1-3 (Complaint against North Carolina, two individuals identified only as "Cook and Watson," and unidentified female for incident "on October 3, 1996" concerning "domestic dispute"); Docket Entry 60 at 1 (purporting to seek summary judgment for incident "[o]n April 5, 1989"); Docket Entry 60-1 at 1-3 (Complaint against North Carolina and law firm for incident "[o]n April 5, 1989" concerning "making of [] non-existing [w]ill filed in probate office"); Docket Entry 160 at 1 (purporting to seek summary judgment for incident "[o]n March 15, 2021"); Docket Entry 160-1 at 1-3 (Complaint against North Carolina and tow truck company for incident "[o]n March 15, 2021" concerning "lift-drop[ping Plaintiff's] car while [he] was serving 120 days in Nash County corection [sic] center"); Docket Entry 245 at 1 (purporting to seek summary judgment for incident "on February 12, 2002"); Docket Entry 245-1 at 1-3 (Complaint against North Carolina, state judge, and state prosecutor for incident on "February 12, 2002" concerning imposition of fine for driving offense)).

Worse still, on June 30, 2023, more than a week after Judge Osteen expressly directed Plaintiff to cease "making [such] improper filings," Armstrong, 2023 WL 4133937, at *1, on penalty "of monetary and non-monetary sanctions," id., Plaintiff filed nine more Motions for Summary Judgment in this case (see Docket Entries 287 - 295). As with the 284 Motions for Summary Judgment which preceded them, Plaintiff's last set of nine Motions for Summary Judgment do not address the Complaint in this case, but instead propose to litigate unrelated allegations via new complaints. (See Docket Entry 287 at 1 (purporting to seek summary judgment for incident "[o]n January 30, 2023"); Docket Entry 287-1 at 1-3 (Complaint against North Carolina and Keith Stone for Plaintiff's arrest "[o]n January 30, 2023");[2] Docket Entry 288 at 1 (purporting to seek summary judgment for incident "on May 25, 2000"); Docket Entry 288-1 at 1-3 (Complaint against North Carolina, "senior resident judge of Durham County and . . . district [a]ttorney," for incidents "on May 25, 2000 and November 27, 2001," when judge "fined [Plaintiff]" and district attorney "failed to investigate . . . or investigated . . . but failed to discover or discovered

---

2 On the same day, Plaintiff also used the case number for this case to file a Petition for Leave to File Complaint (see Docket Entry 296 at 1), to which he attached a materially indistinguishable, proposed complaint against North Carolina and Keith Stone (see Docket Entry 296-1 at 1-3). Ten days later, the Clerk received yet another filing from Plaintiff (bearing the caption and case number for this case) requesting leave to file the same basic complaint. (See Docket Entries 298, 298-1, 298-2.)

7

the lack of probable cause . . . [before] making . . . speeding violation false reports" (emphasis omitted)); Docket Entry 289 at 1 (purporting to seek summary judgment for incident "[o]n July 14, 2022"); Docket Entry 289-1 at 1-3 (Complaint against United States and federal judge for incident "[o]n July 14, 2022," when judge "denied [ P]laintiff total access to the judicial process . . . [by ruling that Plaintiff] ha[d] not made the requisite demonstration to reopen the time to appeal"); Docket Entry 290 at 1 (purporting to seek summary judgment for incident "[o]n August 25, 1999"); Docket Entry 290-1 at 1-3 (Complaint against North Carolina and state judge for incident "[o]n August 25, 1999," when judge falsely reported that Plaintiff "failed to appear (FTA) for DUI violation"); Docket Entry 291 at 1 (purporting to seek summary judgment for incident "[o]n May 27, 2014"); Docket Entry 291-1 at 1-3 (Complaint against United States and federal judge for incident "[o]n May 27, 2014," when judge "barred [ P]laintiff total access to the United States District Court for the Eastern District of North Carolina," by falsely reporting that Plaintiff "fil[ed] frivolous complaint"); Docket Entry 292 at 1 (purporting to seek summary judgment for incident "on July 18, 2016"); Docket Entry 292-1 at 1-3 (Complaint against United States and federal judge for incident "[o]n July 18, 2016," when judge "barred [ P]laintiff total access to the United States District Court for the Eastern District of North Carolina . . . [by] charg[ing P]laintiff $2400.00

8

filing fee . . . [and dismissing his] action"); Docket Entry 293 at 1 (purporting to seek summary judgment for incident "on October 30, 1999"); Docket Entry 293-1 at 1-3 (Complaint against North Carolina, state judge, and state prosecutor for incident "on October 30, 1999," when judge "ma[de ] FTA for DUI false reports" and prosecutor "failed to investigate . . . or investigated . . . but failed to discover or discovered the lack of probable cause . . . [before] making . . . DUI and FTA false reports" (emphasis omitted)); Docket Entry 294 at 1 (purporting to seek summary judgment for incident "[o]n October 30, 1999"); Docket Entry 294-1 at 1-3 (Complaint against North Carolina and state judge for incident "[o]n October 30, 1999," when judge accused "Plaintiff [of] FTA for a DUI"); Docket Entry 295 at 1 (purporting to seek summary judgment for incident "[o]n April 16, 1999"); Docket Entry 295-1 at 1-3 (Complaint against North Carolina and John Thompson for incident "[o]n April 16, 1999," when Thompson accused "Plaintiff [of] act[ing] with DUI").)[3]

---

3 Additionally, on July 3, 2023, the Clerk received a Motion for Leave to File Complaint, bearing the caption and case number for this case, dated as signed on June 29, 2023 (see Docket Entry 297 at 1; see also Docket Entry 297-2 at 2 (reflecting receipt date-stamp on accompanying envelope)), with a proposed complaint against North Carolina, Linda L. Thorne, Quentin T. Sumner, and Robert A. Evans, regarding an incident "on April 29, 2020" (Docket Entry 297-1 at 1), "when [Plaintiff] was jailed 120 days without due process of law" (id.). That same day, Plaintiff made a filing in a closed case, see Mot. for Reconsideration, Armstrong v. North Carolina, No. 1:23CV297, Docket Entry 21 (M.D.N.C. July 3, 2023), with a (conclusory) proposed complaint against North Carolina and
(continued...)

9

A month later, Plaintiff instituted yet another frivolous action. See Compl., Armstrong v. North Carolina, No. 1:23CV642, Docket Entry 1-1 at 1-2 (M.D.N.C. Aug. 2, 2023) ("pray[ing] for judgment in the sum of $35,000,000.00 under [Section] 1983" against North Carolina and tow truck company for latter's conduct "[o]n July 29, 2023," in towing Plaintiff's vehicle from "private property of 42nd Street Oyster Bar," based on "parking violation false reports," and "charg[ing him] $200.00 towing fee in violation of the Fourth and Fourteenth Amendments" (emphasis omitted)).[4] Lastly (as concerns Plaintiff's recent filings in this Court), on

---

3(...continued)
a police chief, regarding a driving-infraction-related incident "on April 16, 1999," Compl., Armstrong v. North Carolina, No. 1:23CV297, Docket Entry 21-1 at 1 (M.D.N.C. July 3, 2023).

4 The undersigned Magistrate Judge will enter a separate recommendation of dismissal of the above-cited complaint, but will note (for present purposes) that it suffers from these fatal defects: (1) a lack of sufficient, non-conclusory factual matter to state a claim, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (mandating that complaints "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (internal quotation marks omitted)); (2) the exclusion of states from the definition of persons subject to liability under Section 1983, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989); see also id. at 66 (stating that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); and (3) the absence of allegations sufficient to establish that the tow truck company met Section 1983's state action requirement, see Rice v. United Towing, Inc., No. 3:14CV300, 2014 WL 2968966, at *1 (W.D.N.C. July 1, 2014) (unpublished) (reaffirming dismissal of Section 1983 claim against "towing company," which allegedly "towed [the plaintiff's] vehicle from [a] parking lot," despite his possession of "a parking permit," because, under those facts, towing company qualified "as a private actor, [which] cannot be sued under Section 1983" (internal quotation marks omitted)).

10

August 14, 2023, the Clerk docketed an unsigned document dated August 10, 2023, bearing the caption of the (above-discussed) case that Judge Osteen, Jr. dismissed on June 22, 2023 (while striking Plaintiff's procedurally improper motions therein and forewarning of sanctions for further frivolous filings), see Pet. for Leave to File Am. Compl., Armstrong v. North Carolina, No. 1:23CV297, Docket Entry 22 at 1 (M.D.N.C. Aug. 14, 2023), to which Plaintiff attached a proposed complaint (dated as signed and verified on August 10, 2023) asserting a conclusory Section 1983 claim against North Carolina and Quentin T. Sumner, in connection with a driving-infraction-related incident on September 14, 2020, see Proposed Compl., Armstrong v. North Carolina, No. 1:23CV297, Docket Entry 22-1 at 1-3 (M.D.N.C. Aug. 14, 2023).

Turning from that procedural history of Plaintiff's abusive litigation conduct in this Court, to the required review of the Complaint in this case – as mandated by the existing injunction against him, see Armstrong, No. 1:97CV1028, Docket Entry 48 at 2 – the undersigned Magistrate Judge recommends dismissal of this action for several of the same reasons that led the Court to reject Plaintiff's prior, post-injunction, litigation efforts. First, the Complaint focuses on events which allegedly transpired more than 23 years ago (see Docket Entry 1 at 1), i.e., well after the applicable limitations period lapsed, see Manion v. North Carolina Med. Bd., 693 F. App'x 178, 182 (4th Cir. 2017) ("It is well

11

settled that § 1983 . . . borrow[s] the state's general personal injury limitations period. North Carolina's statute of limitations in personal injury cases runs three years . . . ." (internal brackets, quotation marks, ellipsis, and citation omitted)). As with an earlier (unsuccessful) action by Plaintiff targeting the same incident at issue here, also "filed [long] after expiration of the statute of limitations governing his claims," Armstrong v. City of Durham, No. 1:09CV15, Docket Entry 2 at 3 (M.D.N.C. Dec. 30, 2011) (slip op.), recommendation adopted, Docket Entry 4 (M.D.N.C. Feb. 14, 2012) (slip op.), the Complaint's "claims are therefore non-meritorious and should be dismissed pursuant to the injunction limiting the initiation of civil litigation by Plaintiff," id. (internal quotation marks omitted).

Further (as just mentioned), the Complaint's allegations (quoted at length in the opening paragraph of this Recommendation) simply recycle claims Plaintiff unsuccessfully tried to litigate in the past. See Compl., Armstrong v. City of Durham, No. 1:09CV15, Docket Entry 1 at 1-2 (M.D.N.C. Jan. 6, 2009) (asserting Section 1983 claim(s) against, inter alia, "City of Durham" and "Chief of the City of Durham Police Department," because, "[o]n January 12, 2000, . . . [said] Chief . . ., without probable cause, stopped and detained [P]laintiff, made an entry, without a warrant, onto private areas of personal premise of [P]laintiff, invaded hi[s] privacy, searched and seized his property in violation of the

12

Fourth Amendment," and "[t]hen made false reports that [P]laintiff traveled 71/55 . . . amounting to official discrimination . . . in violation of the Fourteenth Amendment"); Am. Compl., Armstrong v. City of Durham, No. 1:00MC123, Docket Entry 14 at 1-2 (M.D.N.C. Dec. 12, 2008) (proposing Section 1983 claim against, inter alia, "City of Durham" and "Chief of the City of Durham Police Department," because, "[o]n January 12, 2000, . . . [said] Chief . . ., without probable cause, stopped and detained [P]laintiff, made an entry, without a warrant, onto private areas of personal premise of [P]laintiff, invaded hi[s] privacy, searched and seized his property in violation of the Fourth Amendment," and "[t]hen made false reports that [P]laintiff traveled 71/55 . . . amounting to official discrimination . . . in violation of the Fourteenth Amendment"); see also Armstrong, No. 1:09CV15, Docket Entry 4 at 1 ("Plaintiff's complaint . . . is hereby[] dismissed with prejudice."); Armstrong v. Durham Police Dep't, No. 1:00MC123, Docket Entry 15 at 3-4 (M.D.N.C. Mar. 6, 2009) (slip op.) (denying motion for leave to file amended complaint). "[T]his action [thus should be] dismissed as an attempt to relitigate matters which have been previously dismissed." Armstrong, 2007 WL 3046185, at *1.

Finally, due to the Complaint's conclusory character, "[e]ven if it were not an attempt to resurrect a matter previously dismissed, [the Complaint] is insufficient to state a cause of action." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

13

(requiring "factual matter," rather than "legal conclusions" and "conclusory statements," to sustain claims).[5] Given the foregoing considerations, the Court should dismiss this action.

Along with that dismissal, the Court (A) should strike all of Plaintiff's other filings in this case as procedurally improper and/or otherwise defective (as detailed above), and (B) should impose monetary and non-monetary sanctions against Plaintiff due to his unrelenting abuse of this Court's limited resources (as detailed above). On the subject of sanctions, the Court should take particular note of the fact that, on multiple occasions after Judge Osteen, Jr. warned Plaintiff against continuing to make frivolous filings and of the consequences for disregarding that warning, see Armstrong, 2023 WL 4133937, at *1, Plaintiff has persisted in his pattern of abusive litigation practices.

These words from the United States Supreme Court apply with equal force to the situation the Court confronts here:

> Every paper filed with the Clerk of this Court . . . requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual

---

5 In any event, no Section 1983 (or other) claim against North Carolina can proceed in this Court. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989) (holding that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); Manion, 693 F. App'x at 180 ("Under the Eleventh Amendment, states . . . are immune from suit. Eleventh Amendment immunity withdraws jurisdiction over a suit and mandates dismissal." (internal citations, quotation marks, and brackets omitted)).

14

> processing of [Plaintiff's] frivolous [filings] does not promote that end.

In re McDonald, 489 U.S. 180, 184 (1989).

The injunction currently in place against Plaintiff prevents him from using pauper applications to evade filing fees, but Plaintiff has thwarted that limitation on his ability to unreasonably burden the Court by paying the filing fee for one complaint and then filing multitudinous motions each of which presents an additional complaint. The Court should impose a monetary sanction for that abusive conduct (in which Plaintiff has persisted despite notice that monetary sanctions would follow)[6] and should supplement the existing injunction to preclude him from filing anything other than a complaint for which he has paid the filing fee (unless the Court, upon or in conjunction with its review, chooses to authorize other specified filings, e.g., objections to a recommendation).[7]

---

[6] An assessment of $100 for each of the nine frivolous summary judgment motions Plaintiff filed in this case after Judge Osteen, Jr.'s directive to cease such filings (for a total of $900) represents a proportional response by the Court, in line with action taken against Plaintiff by the United States Court of Appeals for the Fourth Circuit for like reasons, see In re Armstrong, Nos. 14-347 (L), 14-348, 14-351, 14-352, 14-359, 14-361 - 14-374, Docket Entry 11 at 5 (4th Cir. Oct. 14, 2014) (slip op.) ("Because Armstrong has shown no willingness to curtail his litigious behavior, which causes an unjustified waste of judicial resources, we sanction him $2000 and enjoin him from filing any pleading in this court until the sanction is paid.").

[7] Consistent with the proposed supplemental injunction, a neighboring court similarly plagued by Plaintiff's vexatious
(continued...)

**IT IS THEREFORE RECOMMENDED** that all of Plaintiff's post-Complaint filings in this case (Docket Entries 2 - 298) be stricken and that this action be dismissed without a certification that an appeal would have any merit.

**IT IS FURTHER RECOMMENDED** that Plaintiff be ordered to pay $900 as a monetary sanction for his abusive litigation conduct.

**IT IS FURTHER RECOMMENDED** that Plaintiff be enjoined from filing any document with this Court in any case unless and until he first pays any outstanding monetary sanction(s) and that any documents submitted to the Court by Plaintiff prior to such payment be held for his retrieval or returned to him without docketing.

**IT IS FURTHER RECOMMENDED** that, as a supplement to any other injunction(s) against him, Plaintiff be enjoined as follows: After paying all outstanding monetary sanctions in full and paying the filing fee for any new action, Plaintiff shall not file any document with the Court other than a (single) complaint, unless and

---

7(...continued)
filings has ordered that, "[u]ntil the court concludes that a complaint [for which he has paid the filing fee] meets the requirements of [pleading legal claims and supporting facts with specificity] and is not otherwise repetitious or frivolous, [he] may not file any other document in the case, including any motions," Armstrong v. Woodard, No. 5:12CV805, Docket Entry 26 at 2 (E.D.N.C. Mar. 29, 2013) (slip op.), leave to appeal denied, In re Armstrong, Nos. 22-273, 274, Docket Entry 9 (4th Cir. Dec. 13, 2022) (slip op.), reconsideration denied, Docket Entry 14 (4th Cir. Jan. 30, 2023) (slip op.); see also id. at 2-3 ("Any attempt to file documents by Armstrong during this review period will result in the Clerk's Office holding for his retrieval or returning the material to [him] without entry on the docket sheet . . . .").

16

until the Court authorizes any further filing(s) in that case. Any documents submitted to the Court by Plaintiff prior to any such authorization or beyond the scope of any such authorization shall be held for his retrieval or returned to him without docketing.

                                                  /s/ L. Patrick Auld
                                                        **L. Patrick Auld**
                                        **United States Magistrate Judge**

September 21, 2023